# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

MICHELLE DOREEN JACKSON,
ADC #704376                                                                      PLAINTIFF

V.                                        4:14CV00348 SWW/JTR

CHARLES WOODY JONES,
Doctor, Pope County Jail                                              DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Webber Wright. Any party may file written objections to this Recommendation. Objections must be specific and include the factual or legal basis for disagreeing with the Recommendation. An objection to a factual finding must specifically identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of the United States District Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Wright can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I.  Introduction

Plaintiff, Michelle Doreen Jackson, is a prisoner in the Arkansas Department of Correction ("ADC").  She has filed this *pro se* § 1983 action alleging that, while she was a pretrial detainee at the Pope County Jail, Defendant Dr. Charles Woody Jones ("Dr. Jones") failed to provide her with constitutionally adequate medical care for abdominal cramps, constipation, and rectal bleeding.[1]  *Docs. 1, 7, 9, & 13.*

Dr. Jones has filed a Motion for Summary Judgment, and Plaintiff has filed a Response. *Docs. 33, 34, 35, 36, & 42.* Thus, the issues are joined and ready for disposition. For the following reasons, the Court recommends that Dr. Jones's Motion for Summary Judgment be granted, and that this case be dismissed, with prejudice.

## II.  Facts

The facts, viewed in the light most favorable to Plaintiff, are as follows:

1.      On November 21, 2012, Dr. Jones examined Plaintiff in response to her complaints of abdominal cramps and diagnosed her with irritable bowel syndrome. He prescribed Bentyl, twice a day, and instructed her to eat a non-dairy diet. *Doc. 36.*

2.      On January 9, 2013, Plaintiff sought medical treatment because she had "pulled her back out." *Id.  at 3.*  Dr. Jones prescribed Tramadol and Flexeril for her back pain.

---

[1] The Court has previously dismissed all other claims and Defendants. *Docs. 10 & 17.*

3.    On January 30, 2013, Plaintiff told Dr. Jones that she was having cramps, bloating, and green stools when she stopped taking Bentyl.  Dr. Jones treated those symptoms by renewing her Bentyl prescription.  *Id.*

4.    On February 6, 2013, Plaintiff told Dr. Jones that, during the past few weeks, she was experiencing constipation, gas, and bloating.  Dr. Jones instructed her to take Mirlax daily and reduced her Tramadol prescription.  *Id.*

5.    On February 13, 2013, Plaintiff reported severe abdominal cramps and some bleeding while defecating. Dr. Jones noted that her abdomen was mildly to moderately tender and that she had good bowel signs. He determined that she had a large internal hemorrhoid at "seven o'clock," but no evidence of blood in her stool.[2] He prescribed a thirty-day course of suppositories to treat Plaintiff's hemorrhoid, discontinued Tramadol, and increased her Miralax prescription.  *Id.*

6.    On February 19, 2013, Plaintiff told Dr. Jones that she was constipated because the jail staff had not given her Miralax, as prescribed.  She also reported a small amount of blood when defecating. Dr. Jones noted that Plaintiff's abdomen was soft and mildly bloated, but that she had normal bowel signs. He renewed her

---

[2] Plaintiff alleges, in her sworn affidavits, that Dr. Jones conducted this exam by putting "two fingers in my vagina, not my rectum."  *Doc. 7 at 9; Doc. 13 at 9.*  While Dr. Jones did not file an affidavit responding to this allegation, his medical notes directly refute the contention, *i.e.,* he found Plaintiff had a large internal hemorrhoid at "seven o'clock," a medical diagnosis that could only have been made by performing a digital rectal exam. *Id. at 12.*

prescriptions for Miralax and the rectal suppository for her hemorrhoid, and ordered an x-ray of her abdomen a private hospital. *Id.*

7.      This x-ray, taken on February 20, 2013, revealed a "large amount of stool in [the] colon likely reflecting constipation." *Id. at 16.* No other abdominal abnormalities were detected. *Id.*

8.      On March 6, 2013, Plaintiff told Dr. Jones that she was having strong abdominal cramps and diarrhea, but no bleeding with bowel movements. He increased her Bentyl prescription to four times a day and decreased her Miralax prescription to once a day. *Id.*

9.      On April 3, 2013, Plaintiff reported small bowel movements and pain in her lower abdomen that she believed was probably caused by jail staff failing to give her Miralax for the last two weeks. Dr. Jones noted that, while Plaintiff's stomach was mildly distended, she had good bowel signs and was not having any rectal bleeding. He instructed Plaintiff to take Miralax twice a day until her constipation resolved. *Id.*

10.      On April 10, 2013, Plaintiff told Dr. Jones that she was having daily bowel movements and "feeling much better." *Id. at 10.* He instructed her to decrease her Miralax to once a day and prescribed a high fiber diet. *Id.*

11.      On April 17, 2013, Plaintiff reported that she was having rectal pain and bleeding, despite having regular soft bowel movements, and that she thought her

hemorrhoid had returned. Dr. Jones referred Plaintiff to a private surgeon for evaluation. *Id.*

12.    On April 26, 2013, Plaintiff was examined by a private surgeon, who determined that she had an internal hemorrhoid on the left lateral side.[3] The surgeon prescribed "Mag Citrate" and Miralax to treat constipation, instructed Plaintiff to eat a high fiber diet, and recommended a colonoscopy to rule out an obstruction. *Id.*

13.    On May 1, 2013, Dr. Jones reviewed the surgeon's findings with Plaintiff, who reported that she was "sore but a little better." *Id. at 34.* He also noted that he would schedule the recommended colonoscopy with the private surgeon. *Id.*

14.    On May 8, 2014, Plaintiff told Dr. Jones that she was having rectal bleeding and a lack of energy. He wrote in his notes that she needed, but had not yet received, a colonoscopy. *Id.*

15.    On May 15, 2013, the private surgeon performed a colonoscopy.[4] It revealed a small polyp in the descending colon and a rectal mass that was approximately a quarter of the circumference of her rectum. A biopsy of the rectal mass later revealed that Plaintiff had invasive squamous cell carcinoma. *Id.*

---

[3] This diagnosis of an internal hemorrhoid was *the same diagnosis* that Dr. Jones made on February 13, 2013.

[4]    The medical records make it clear that Dr. Jones agreed with the surgeon's recommendation that Plaintiff needed to have a colonoscopy. Because Plaintiff had that procedure within fourteen days of seeing Dr. Jones on May 1, 2013, this makes it clear that Dr. Jones would have contacted the surgeon and scheduled the colonoscopy shortly after he saw Plaintiff on May 1.

16.     On May 29, 2013, Dr. Jones referred Plaintiff to the oncology department of the University of Arkansas for Medical Sciences hospital ("UAMS") for treatment of rectal cancer. *Id.*

### III. Discussion

Dr. Jones argues that he is entitled to summary judgment on the inadequate medical care claim Plaintiff has asserted against him.[5] The Court agrees.

To proceed to trial on her inadequate medical care claim, Plaintiff must have evidence demonstrating that: (1) she had an objectively serious medical need; and (2) Dr. Jones subjectively knew of, but was deliberately indifferent to, that objectively serious medical need.[6] *See Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). As to the second prong of that test, it is clear that negligence, gross negligence, and a mere disagreement with

---

[5] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[6] At the time her inadequate medical care claim arose, Plaintiff was a pretrial detainee. Nevertheless, her claims are governed by the same deliberate indifference that applies to convicted prisoners, with the only difference being the constitutional amendments (Fourteenth versus Eighth Amendments) under which those protections are derived. *Vaughn v. Greene Cnty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

the course of care are insufficient. *Langford,* 614 F.3d at 460; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).  Instead, deliberate indifference "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001).  In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness."  *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Here, the parties agree that Plaintiff's persistent abdominal cramps, constipation, and rectal bleeding were objectively serious medical needs.  Plaintiff, however, has failed to produce *any evidence* demonstrating that Dr. Jones was deliberately indifferent to her need for medical treatment for those problems.

To the contrary, it is *undisputed* that Dr. Jones: (1) promptly examined Plaintiff every time she complained of gastrointestinal issues; (2) treated her symptoms with appropriate medications that he modified as Plaintiff's symptoms waxed and waned; (3) ordered an x-ray after Plaintiff reported rectal bleeding on February 13, 2013, which was negative for obstructions or masses; (4) sent her to a surgeon for further diagnostic testing nine days after she reported, on April 17, 2013, that her rectal bleeding had resumed; (5) promptly ordered a colonoscopy, as recommended by the surgeon; and (6) referred her to UAMS for treatment soon after she was diagnosed with rectal cancer. This *undisputed* course of care does not constitute deliberate

indifference. *See Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (finding no deliberate indifference when prison doctors treated the prisoner on "numerous occasions" and "made efforts to cure the problem in a reasonable and sensible manner"); *Kayser v. Caspari,* 16 F.3d 280, 281 (8th Cir. 1994) (finding no deliberate indifference when the medical providers did not "ignore [the prisoner's] allegations of pain" and provided him with "an escalating level of treatment for [his] aliments over time").

In an effort to defeat summary judgment, Plaintiff speculates that Dr. Jones would have discovered the rectal mass sooner if he had preformed a rectal exam when she first reported abdominal cramps on November 21, 2012. *Docs. 7 at 13; Doc. 13 at 10.* On November 21, 2012, Plaintiff did not complain about any rectal bleeding, and her only complaint was abdominal cramps. That complaint, standing alone, did not cause Dr. Jones, in the exercise of his medical judgment, to believe a digital rectal exam was warranted. Other than her own "lay opinions," Plaintiff has not come forward with *any medical evidence* to support her subjective belief that: (1) complaints of abdominal cramps warranted a digital rectal exam; (2) if a digital rectal exam had been performed on November 21, 2012, Dr. Jones would have detected the cancerous rectal mass;[7] and (3) her prognosis would have been any different if the

---

[7] As indicated earlier, on April 26, 2013, a private surgeon performed a digital rectal exam and *determined only that Plaintiff had an internal hemorrhoid on her left later side*. He

cancerous mass had been discovered at that time. *Gibson*, 433 F.3d at 646 (8th Cir. 2006) (explaining that, to avoid summary judgment on a delay in medical care claim, an inmate must place verifying medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (same). Finally, even if Plaintiff had medical evidence to support her argument, at most it might establish that Dr. Jones acted negligently, which is insufficient to support a § 1983 claim. *See Langford,* 614 F.3d at 460; *Gibson,* 433 F.3d at 646.

Plaintiff also contends that, on February 13, 2013, Dr. Jones was deliberately indifferent when he allegedly diagnosed her hemorrhoid based on a digital vaginal exam rather than a digital rectal exam. This allegation is in direct conflict with the medical records which establish that *Dr. Jones specifically diagnosed an internal hemorrhoid at "seven o'clock,"* something that could only have been discovered, with that degree of specificity, by a digital rectal exam. *See Meuir v. Greene Cnty. Jail Emp.*, 487 F.3d 1115, 1118 (8th Cir. 2007) (emphasizing that prisoners "must clear a substantial evidentiary threshold" to sustain an inadequate medical care claim in the face of conflicting medical records); *Dulany*, 132 F.3d at 1239 (holding that "prison

---

recommended that Plaintiff undergo a colonoscopy to rule out an obstruction. This is strong evidence that if the cancerous mass was present on November 21, 2012, and Dr. Jones had performed a digital rectal exam, he would *not* have been able to detect the mass.

doctors remain free to exercise their independent medical judgment"). Finally, it is undisputed that, when Plaintiff was examined by a surgeon on April 26, 2013, he performed a digital rectal exam and found that Plaintiff had an internal hemorrhoid, on the left lateral side, which is the same diagnosis Dr. Jones made after he performed a digital rectal exam on February 13, 2013.  This is what prompted the surgeon to recommend that Plaintiff have *a colonoscopy*, which would allow a deeper examination of her descending colon.

Because Plaintiff has not produced any evidence of deliberate indifference, Dr. Jones is entitled to summary judgment and Plaintiff's inadequate medical care claim against him should be dismissed, with prejudice.

## IV.  Conclusion

IT IS THEREFORE RECOMMENDED that Dr. Jones's Motion for Summary Judgment *(Doc. 33)* be GRANTED, and that this case DISMISSED, WITH PREJUDICE.

Dated this 20th day of January, 2016.

_____
UNITED STATES MAGISTRATE JUDGE